Good morning. My name is Joanna Grigorieff. I'm a Senior Deputy Attorney General representing the State of Nevada Division of Insurance and the Nevada Commission of Insurance in this appeal. I would like to reserve five minutes for the rebuttal by my co-counsel, Mr. Chesney, and we're yielding five minutes to the amicus. All right. Thank you. We're seeking a reversal of the order by the district court in this case granting A&I's motion for summary judgment as it was based on numerous errors of law. The key error made by the district court was its ruling that found, without any analysis really, various Nevada motor vehicle financial responsibility statutes to be preempted under the Liability Risk Retention Act or LIRA. Well, I guess I wonder why it doesn't seem to me that either party takes the position that the statutes are preempted, but that the Commissioner's interpretation is wrong. Your Honor, we had addressed that at the district court level as far as the standard of review. We had raised the issue that the standard of review is de novo and not Well, it seemed to me that reading the briefs and doing what I had to do that I was really looking at the Commissioner's interpretation of the Nevada statutes, and that's what we're really here about. We're not really about the statutes itself. We had submitted, and that was admitted by the district court, an affidavit from the Commissioner of Insurance, Brett Barrett, who issued the order. Well, your arguments focus on the order. The order was the subject of the preemption portion of the decision, and I guess that's why I focused on the fact that we're really talking about the order and whether the order is preempted or what it is. Our position was, and we supplemented with the affidavit where the Commissioner clearly states that if anything was misinterpreted in his order, that he would like to clarify that nothing prevents ROGs from obtaining a certificate of authority. I'm sorry, there's no requirement that members to obtain a certificate of authority that one be a member of NIAGA, which was the central issue raised by the opinion. My worry is that we're really what I'm reviewing here. It seems to me I'm reviewing what the district court did with the Commissioner's order, and I'm not really reviewing what the district court did with Nevada's statutes necessarily. Your Honor, the case was filed by A&I basically charging that there is a preemption that these statutes are. Preemption of the order of the Commissioner, right? Preemption of the statutes. Well, where in your brief do you address that it's the statutes I'm dealing with? That the statutes are. Not what the statutes say. I mean, I'm just trying to focus in on what I'm really looking at here. It seems to me we're fighting over an order, and that the district court said that the order is wrong, and it's preempted. Well, not the order. Therefore, not wrong, preempted. Sorry, that's why I corrected that. Well, the order is really one paragraph that says that three statutes specifically listed and related statutes from the Nevada revised statutes are preempted under the Liability Risk Retention Act. That is part of the order. Then the court goes on and says, well, we also find a 1983 violation, award attorney's fees under 1988, award injunctive relief. And that was all based on ANI's argument that the requirement of a certificate of authority under Nevada statutes in the Nevada Motor Vehicle Liability Act are preempted by LIRA. Let me move forward, since I didn't find that argument necessarily in your brief. Let me talk to you about this. Let's turn to 3902A1. 3902A1 says, as I read it, a risk retention group is exempt from any state law, rule, regulation, or order to the extent that such law, rule, regulation, or order would make unlawful or regulate directly or indirectly the operation of a risk retention group. Seems directly on point. Your Honor, are you in 3902A? Well, but the act goes on. It's like a funnel. I know the act goes on, but there's what we've got right in front of us. So what's the exception? There's a carve-out. Where's the carve-out? 3905. D? You're talking about D? And D, because this case, the case at issue falls under A, and it falls under D as well. So then how do you, okay, let's even give you that. How do you get around 15 U.S.C. 3002A4, which says that states may not discriminate against an RRG when choosing not to accept the insurance for this purpose? Well, there's three distinct ways we get around it. First of all, these statutes at issue fall under 3905A, which is an unconditional and unequivocal exemption from preemption. And there is no discrimination test that's embedded like in 3905D. That is the first way that this case is. So the only way to get around this then is to say that preemption doesn't apply, or excuse me, that discrimination doesn't apply? Well, that we fall under 3905A on the unconditional carve-out as opposed to 3905D. However, even under 3905D, there are two other ways that we get around the discrimination test. First of all, because it's, there is no discrimination. Well, I mean, let's take it one at a time. Do you think you're allowed to discriminate under the federal statute? For the purpose, the 3905 section carves out, out of the scope of LERA is only as to certain types of laws. The types of laws that are under. Right. So I think you're making a more complicated answer. Do you think you can, under the federal statute, discriminate? Under 3905A, yes. Under 3905D, the discrimination provision is there, but it's, first of all, it's limited by its own limitation within the definition. It says, except as applied to laws that are of general applicability. So in itself, it's limited. Secondly, the discrimination test, there are, the circuits are split how to look at discrimination. Mears and Opthalmic, which is 11th and 7th Circuit, only find discrimination if there is evidence of intentional facial discrimination. Right. The national warranty case found discrimination where it is not necessarily intentional, but it has to be categorical, which means that in national warranty, as opposed to this case, there was no way an RRG could comply with the requirements imposed by the State in order to provide coverage, because by virtue of being an RRG, the requirement being a membership in a guarantee association was impossible to comply with. Right. So how do you square your argument with what the Commissioner decided? Because the Commissioner says RRGs cannot participate in the NIGA, and NIGA is a requirement for the holding of a Nevada Certificate of Authority. Well, the law, however, is different, and what we're submitting is... No, I understand that, but they're subjecting, they're challenging the order, and I think this is what maybe Judge Smith was talking about. I understand how you got to the statutes, because that's where the district court focused. But at the end of the day, we're focusing on the order, and if the order is extra statutory or if it's otherwise preempted, we have to focus on that. So leaving the statutes aside, why isn't there the catch-22 embedded in the Commissioner's order that we referred to earlier in our cases? Well, the language really of the order, it says they cannot be members. It doesn't say that that's why they're being denied opportunity to provide this coverage. That's first of all. Secondly, the Commissioner submitted that to David explaining... Bear with me, bear with me. First of all, it starts off with paragraph 8, insurers that hold a Nevada Certificate of Authority are authorized. ANI is not an authorized insurer since it does not hold a certificate of authority. Because it's not an authorized insurer, blah, blah, blah, RRGs cannot participate in the NIGA, which relates back to paragraph 8. So I read these four paragraphs. I don't see how RRGs can, under the Commissioner's order, can possibly get authority to issue this kind of insurance in Nevada. If I may submit that the order, the district court's order, does not really address, it addresses the preemption of the statutes by LIRA. Gosh, I understand that. Would you answer my question on the Commissioner's order, though? It may be perceived as, but later the affidavit submitted by... How can an affidavit change the effect of the order? The order says this, and then later on after the litigation is finished, the Commissioner says, well, I didn't really mean that in the order. But this was not a petition for judicial review. This was a civil action under preemption, under commerce, I'm sorry, supremacy clause preemption. It was not a review of the order on a petition for judicial review. So it's a novel standard. Right. I mean, that would be a Nevada state court, right, on a petition for review. Right. Here we're talking about ANI says we can't, we cannot get authority in Nevada to issue this kind of insurance. And the Commissioner says that's right. And, in fact, you can never get authority. That's what the order says. If we're confined to the order, wait a second, isn't the order preempted? If we're confined to the order, it may be perceived as preempted. Although I submit that there's a, it was misinterpreted. There were separate statements made, maybe inarticulately. The bottom line is the law permits ROGs who are domiciled in Nevada to obtain a certificate of authority. So we're looking at the law, and the law permits that. So by preempting the order of the Commissioner, that does not, that would be fine on a state petition for judicial review, made errors of law go back to the administrative level. However, this is a, in federal court, it's a separate civil action. It's a separate civil action that's based on the harm suffered by the Commissioner's order. I mean, that's the only way they can get into court on standings. They've suffered harm. And they didn't suffer harm because of the statute. They suffered harm because of the Commissioner's order that construed the statute. But the factually. Are you saying, do you agree then that the Commissioner's construction as set forth in the order is wrong? I would say it could be perceived as. I don't understand your answer. Is it wrong or not? I mean, perceived as wrong? Yes, it's wrong. If you read it as that the requirement of NICA is the only way to get a certificate of authority in Nevada, that is legally incorrect. Okay. But the harm suffered, I mean, that is the law. The facts are such that they can obtain a certificate of authority by domiciling. These laws fall under an exception. If it's wrong, what is their remedy now? To reapply? I mean, if this Commissioner's order is legally wrong, and that's the basis on which they were denied permission to issue insurance, what is their remedy now? Maybe the underlying rationale for the result in the order may be wrong. But the order, the result, which is the denial of them being able to issue first dollar coverage is correct. Only the underlying, one of the underlying legal conclusions, but the result of the order is correct because they cannot issue first dollar coverage because they do not have a certificate of authority, whether or not they're members of NICA. All right. I think I understand your argument. Our questions are taking a little over time, but we'll give your counsel time. Thank you very much. And you would argue for five minutes, is that right? Yes. Very good. We'll give you the five. Thank you. Jill Jacoby on behalf of amicus Dave Jones, Insurance Commissioner of the State of California. Just to follow up on your question, I think the answer is that ANI could apply for a certificate of authority in Nevada, and then they could issue motor vehicle financial responsibility laws. And I don't think that that order was preempted under 309. Well, how do you deal with paragraph 8? An insurer that holds a Nevada certificate of authority authorized a first dollar automobile insurance liability and subject to Nevada Insurance Guarantee Association, which insures, and it goes on, that you have to be a member of NIGA to be authorized. Do you agree with that or not? I accept counsel's representation that the second part of that is wrong. Okay. But I believe the first part is correct. And I believe that that's not preempted under 309.5a, which specifically reserves to the States the right to apply motor vehicle financial responsibility  I also believe that this order was not preempted. Well, your argument is somewhat similar, then, to what she said, because I guess we went through that before. One could argue that you're finding some reason, because it's a financial responsibility law, that therefore you could have this exception, if you will, to the preemption. But then we get right back to discrimination. Only if you go to the more general Section D. If you stay with the specific Section A, it doesn't cross-reference the discrimination. And it's very specific, motor vehicle financial responsibility. Are you talking about of the same statute? Yes, 309.5a. Well, I was going to say, well, that seems a little weird to me, because 3902a, are you talking about 5? 5. All right. Okay. I understand your argument there. Yes. But going back to the discrimination issue, I think it depends upon your question, what is discrimination? Because you could read the statute to be discriminatory towards risk retention groups under the Federal law. So as a class? Yes. But in that instance, what national warranty would surely apply? Well, I think if you apply the D section, which is what national warranty is. I mean, if you're really going to exclude this as a part of a class, it seems to me national warranty is something I can't get around. Tell me how I'm going to get around it. Well, as Your Honor, it knows in our brief we did ask this panel to consider question the reasoning in national warranty, because there were several statements, errors in the analysis. So we can't do that. We can't reverse another panel. I understand. All we can do is send this up for somebody else above us to deal with it. I do understand that. But just wanted to go over some of those errors in national warranty. In the case of national warranty, the circuit said that risk retention groups as a group were sufficiently trustworthy, or Congress found that, that they would be free from State insurance regulation. And that's not what the LIRA does. The LIRA sets up State insurance regulation. There's a primary regulator, which is the State that licenses the risk retention group. And then there are secondary regulators, which are the States that register the risk retention group. National warranty also added some language to the decision about discrimination applied to an economic standard, which is not in the LIRA. It didn't look at the history, like the Seventh Circuit did, and not found like mutual. And so it just came up with some things by a whole cloth. And I would say that you don't like the decision, and we're bound by it. Where does that leave us? Well, going back to the statute, though, which we're also bound by. Well, you know, we have to follow circuit law. So you can make your petition for re-hearing on BOG if we end up following it. But tell us how this is different. Well, it is different because it's a motor vehicle financial responsibility law. So 3905A does apply. So I think you can distinguish national warranty. Do you think that the fact that there's a carve-out for mandatory auto insurance, that it means that the statute doesn't apply at all? I mean, obviously other circuits have looked at it and held that, well, you can't discriminate in terms of what a state requires as a standard contract. But there's not a circuit, I think, that says you can wholesale discriminate, except the Eleventh. Those other circuits were also looking at subpart D, not subpart A. Well, but even if we go to this is not really insurance business, this is more about the relationship between the buyer and the seller, if I read 3902A1, I can't find any interpretation in 39A1 that goes there. It covers all regulation of the operation of an RRG. Well, again, it talks about the domestic state licenses, the risk retention group, and then there's a number of very significant rights. Well, point to me the language I'm going to get to, to get to your argument in 3902A1. And I'm bound in 3902A1 by what's in 4, which is about discrimination. Right, but it says otherwise discriminate. So, again, it talks about the different rules that don't apply. Discrimination is usually treating groups differently. So you could say that this is a discriminatory framework. And you were going to find the language in there? I'm going to really hype right in and say that's why I can get this out from under 3902A1? Well, I believe 3905A does not have the cross-reference to discrimination that 3905D does. So I think because motor vehicle financial responsibility laws are so important to the public, I don't think you need to go to the question of discrimination. Well, let me ask you this, though. Do you think that a consistent with the federal statute can take the position that RRGs categorically can't write first-dollar automobile liability codes? Yes, I believe so. You think they can discriminate? Under 3905A. All right. Thank you for your argument. And we'll give you the five minutes for rebuttal, too. May it please the Court. I'm Kimberly Rushton, appearing on behalf of the Alliance of Nonprofits for Insurance, a risk retention group. This case is about Nevada's impermissible discrimination against risk retention groups. It is inconsistent with the Liability Risk Retention Act and inconsistent with this Court's holding in national warranty. This case derives specifically from the language that the Court read earlier that was a statement of former Commissioner of Insurance Barrett, which stated, "...insurers that hold a Nevada Certificate of Authority are authorized to write first-dollar liability insurance in the State of Nevada and are subject to Nevada's Insurance Guarantee Association, otherwise referred to as NIGA." There is absolutely no Nevada statutory scheme which supports this statement. It is clearly an administrative policy determination made in an attempt to discriminate against risk retention groups in favor of domestic insurers. Based on appellate's briefs, the issue before this Honorable Court for consideration is whether this case is materially distinguishable from national warranty. It's not. There has been a categorical discrimination against risk retention groups. Non-chartered RRGs, an identified group by Congress under the LRRA, are prohibited from writing first-dollar automobile liability insurance in the State of Nevada. And but for the initiation of this Act, that holding or that policy determination by Commissioner Barrett would still be the policy in the State of Nevada. But for the permanent injunction entered by Judge Mahan, that would be the policy of the State of Nevada. One of the things that puzzles me about this, and we discussed it a little bit in the opening argument, is that the district court focused on the statutes only. It did not focus on the Commissioner's order. How are we supposed to sort that out in terms of our analysis of whether the statutes are preempted or whether the Commissioner's interpretation of the statutes are preempted? The complaint in this action was filed specifically in response to the Commissioner's action. And when Judge Mahan initially took the bench, he noted that fact and categorically went through that with the State of Nevada with respect to the specific provisions of the order. So it was covered and it was considered by the court. It's that order in which it serves as the basis for this case. And it's that determination that non-chartered RRGs are precluded from writing first-dollar automobile liability insurance that serves as the distinction or the basis for why this case is directly on point and specific to national warranty. There is no way that non-chartered RRGs in the State of Nevada can write first-dollar automobile liability insurance without having a certificate of authority. Well, the reason I ask is that one can take a different view than Nevada statutes and say, well, no, actually you aren't prohibited from going and getting a certificate of authority, even though the Commissioner has taken a different interpretation. And, yes, sir, we agree with that on behalf of Annie. Consistent with the statutory scheme that's specific to uninsured motorist coverage, which is identified as Nevada Revised Statute Chapter 485, it never states that in order to provide proof of financial responsibility or to meet the policy form and coverage requirements as obligated pursuant to 3902a or 3905a, excuse me, that you must maintain a certificate of authority. Rather, that's a determination, an administrative interpretation and application of the statutes. So in and of themselves, I would respectfully submit that Nevada legislature contemplated this and drafted language specific to RRGs and specific to non-chartered RRGs that specifically states that all that is required is a certificate of registration in order to transact business in the State of Nevada. That's consistent with the language under 485, which deals with the Nevada Motor Vehicle Policy or, excuse me, Financial Responsibility Act. And I gather you would concede that you would be bound by the policy restrictions of the particular State, for example, if you were required to, as in Louisiana, carry underinsured coverage and so forth. Annie does not challenge the specifics as set forth in the 3905a relative to policy form and coverage. Consistent with the decisions in both Scheer and Cochran, it is obligatory of all risk retention groups to adhere to the State-specific policy form and coverage requirements, and for obvious reasons. But what the State of Nevada is attempting to do is to look at 3905d to bootstrap that with respect to 3905a and completely eviscerate the obligation or the prohibition against discriminating against non-RRGs, non-chartered. And that's exactly what they've done in this instance. There are ample examples within the Nevada statutory scheme which would otherwise evidence the ability for non-chartered RRGs to write first-dollar insurance. But it wasn't until April of 2010 in Commissioner Barrett's policy decision that they were otherwise precluded from doing so. And even in light of the permanent injunction that was entered by Judge Mahan on the Division of Insurance's website presently, it states that without a certificate of authority, risk retention groups may not write first-dollar automobile insurance. This is no clearer, obvious, or transparent picture of the State of Nevada's attempt to discriminate against RRGs than what they've done in this instance and what they have continued to do. And so for those reasons, national warranties should be reaffirmed, so should the lower court's decision specific to RRGs. There is absolutely no reason why RRGs should not be able to write first-dollar insurance in the State of Nevada as long as they adhere to the policy forming coverage requirements. If I go there, I guess I'm trying to figure out why I need to give you a fee. With respect to the State of Nevada? I'm a little worried about whether you need a fee award because I don't know why 1983 applies. Consistent with this court's decision relative to national warranty and the specific analysis applied by the district court, this is a deprivation of a federal right. Well, just a minute. As I understand the purpose of the LLRA, it's not to confer rights on an individual RRG, is it? Yes, sir, it is. Where is that in the statute? It seems to me that the statute was really made to increase the supply of the commercial liability insurance nationwide. It was also an authorization for risk retention groups to be free of state regulations. Well, but we're really talking now about an individual right of a plaintiff, and I'm talking about whether I'm really going to the individual right in this particular law. And I guess that's why I look really at the purpose of LLRA. I get all these acronyms confused. But, I mean, it seems to me that when you read the background of what happened with this enactment, it would be a stretch to assume that Congress intended to use this preemption to confer an individual right to be free from state law on RRGs. But the LLRA unambiguously creates an enforceable right, creates an obligation, as you indicated, on the states not to overregulate or to regulate the operation of risk retention groups, and thereby affords risk retention groups the ability to domicile in one state and thereafter operate and transact business in other states. That is a right conferred by Congress specific to risk retention groups, and that is the basis for the 1983 action. Well, why can't I instead say that this is really a preemption that gives rise to allocating regulatory power or regulatory interests between two sovereigns? It is specifically intended to empower risk retention groups to transact business in other states without the obligations of adhering to those specific regulatory requirements of each individual state. That's a right that they've conferred upon the risk retention groups. And as such, it falls squarely within 1983. And thereafter, the provisions of 1988 would be applicable on the award of attorneys' fees. This case is no different, as I've indicated before, with respect to national warranty. That was the holding in national warranty, and, of course, in that instance as well, attorneys' fees were awarded. What you're asking an RRG to do is to compel a State to provide its rights to be able to write first-dollar insurance in that specific State or any liability insurance as set forth pursuant to the LRRA. And when that right is extinguished, or perhaps they are the subject of discrimination, such as the case in the State of Nevada, then they have to defend that, and that's And a Federal right that was not otherwise precluded by Congress. And so for those reasons ---- But it seems to me that 3902A really establishes a framework where an RRG is exempt from State laws, only the chartering State may regulate the formulation and operation of the RRG, and all States may regulate RRGs to the extent permitted, but it's only permitted under 3902. So I guess I'm saying that really Congress's purpose here is making it easier for RRGs to operate in a multistate basis. And because of that, I'm really worried whether they intended to confer this right you're arguing about. Well, again, consistent with this Court's holding in national warranty, the Court stated that this obligation is sufficiently specific and definite to be within the benefit of the risk retention groups. It is a right afforded to risk retention groups to not have to domicile an estate and adhere to every State-specific regulatory scheme in order to be able to transact business. And so that in and of itself confers Congress's right in which would make it applicable under a 1983 action. So in your view, no specific language was required? With respect to the LRRA, I think the LRRA is a comprehensive plan in which Congress specifically identified the limitations of the State in terms of its oversight of non-domiciliary RRGs, but also conferred the right of the RRG to be able to operate in those States free of regulatory oversight as long as they were compliant with the domiciliary State in their regulatory scheme. And so for those reasons, again, we look directly to this case, this Court's holding in national warranty, as solid grounds with respect to why this matter is a 1983 action and why attorneys' fees are awardable. But I think it notes stating the fact that they have the State has gone to great lengths to demonstrate the fact that this is not a case of discrimination, and it clearly is. And they fall back to the position that it's a narrow exclusion with respect to non-chartered RRGs only in areas such as public protection. And that's absolutely inconsistent with the congressional intent. As Congress specifically noted in its comment relative to 3905d is that the State's action or the opportunity for States to take action such as that here would otherwise defeat the purpose of the LRRA, which was intended to provide risk retention groups with the ability to freely transact business in other States. But it doesn't mean that the States are devoid of any type of protections for the public. Within the statutory scheme as set forth under the LRRA, there are a plethora of mechanisms and tools in which the State may look to if there is any concern relative to the financial hazardous condition of the specific non-chartered RRG. And in that instance, it provides the public with the reasonable protection that they should be afforded with respect to lines of insurance such as uninsured motorists. Kennedy, normally we're looking at a violation of constitutional rights, and that's why the fees are awarded. This case, we're looking at a violation of statutory construction. No, sir. I would respectfully disagree and say that you're looking at a violation of a Federal right as tendered by Congress and specifically intended by Congress in the adoption of the Liability Risk Retention Act. And for that reason, this is squarely a 1983 action. And in this case, another similarly situated non-chartered RRGs are otherwise discriminated against by the State of Nevada and denied their Federal right to operate in that State free of regulatory oversight and discrimination. Thus you understand that what we're really looking at is the fact or the factors in Blessing v. Firestone. Yes, sir. The three factors. And I guess that's the reason I asked you the questions that I did. It seems to me that whether Congress intended the provision to benefit this particular plaintiff is a question mark. That's why I asked the question, as well as whether the provision giving rise to it is couched in mandatory rather than precatory terms. And those are the reasons for my questions. I mean, we could have this same conversation about preemption without getting into 1983. But this action falls squarely within the obligations incumbent upon the State and the rights afforded to the risk retention group, which is to be free of those State obligations. The preemption is certainly applicable to this matter, but under the Firestone matter, the first and foremost analysis has to be what did Congress intend. And they intended to provide Federal rights and obligations, obligations on the State, rights to the risk retention group, and thereafter the risk retention group. I understand your argument, but that's why I ask you the questions. I'm not so sure that it was a right, but just to increase the supply of the commercial liability insurance nationwide. I'm not so sure it was a right other than it was reallocating the power between the two sovereigns. Well, but looking at the genesis of the LRA and its predecessor, the PLRA, there was a specific need, and the need was to accommodate nonprofits, smaller groups, the little guy that was otherwise unable to afford insurance on the open market. If you deny those rights, that in essence requires the RRGs to domicile in each State and to compete with traditional insurers. That was not Congress's intent. And so the rights that are afforded to the LRRG is for them to be able to write insurance and various lines of liability insurance for individuals and companies, their members, that would otherwise not be able to afford this. Or arguably, it's the right of the consumer, but the consumer is not a litigator. There was a two-prong. I think that Congress intended both. I think it intended to provide a right for the consumer in which they would be able to afford commercial trans or excuse me, commercial liability insurance, and thereafter the right of the risk retention group to operate in those States that they are non-domiciled in and provide that type of liability insurance. But that is clearly what the Congressional intent was, is to bestow a right on the RRGs to be able to transact. I don't find the right anyplace. I'm trying to find it, and I'm reading the language, and that's why I'm asking you the come down to Congress choosing to remove State law barriers to multi-State operations by preempting State law and just reallocating the authority to regulate them. That's a general theory, not giving an individual right. Well, and I would say that the rest, in response to that, the risk retention groups are limited with respect to their liability, the provision of liability insurance. And in that regard, it provides them, Congress intended that that specific ability to write the liability insurance free of State oversight is, again, a right that they wanted to confer upon the risk retention groups in their ability to provide this form of insurance. You cited the national warranty in support of your attorney's fees argument. I gather you are relying not only on the question of right rather than the question of fees specifically. Yes, sir. There were no fees at issue in national warranty, right? I believe that there were fees at issue, and I believe it did speak to 1988 specifically. Where is that? The court said with respect to the lower court, again, I commented or, excuse me. Do you have a page citation for me? It was the Oregon district court in its ruling relative to national warranty that stated that the LRRA unambiguously creates an enforceable right. It creates an obligation on the States not to regulate the obligation of the operation of risk retention groups. So it was the Oregon district court? Yes, sir. Right. So our opinion didn't say anything about fees. Correct. Yes. So that's an open question. Okay. But with respect to 1988, it is a common practice, obviously, with respect to once the court has determined that a 1983 violation has occurred, that 1988 then provides the prevailing party who has been otherwise the rights have been discriminated against the ability to receive the award of attorney's fees. I think, I gather, national warranty is the best case you have, and that's the one you're using. Well, I believe it's the controlling case relative to this matter, and I believe it covered it. Well, I don't – I guess what he's really asking, we're not really controlled by the district court. Yes, sir. Do you have any other good case to cite us? Because I appreciate that you were citing that case, but I knew you were really after the district court decision, and that wasn't too binding on me. But I – and all he's asking, you got something better. Well, I believe that also if you look at – I mean, the State cited to the specific case of Whiteman the White Mountain Apache tribe, and this case can be differentiated from that. In that case, they were talking about the supremacy. In this case, they're talking about the 1983. I think there's some guidance with respect to that matter as well. But I would also say from a practical perspective that the failure to award attorneys' fees has a chilling effect on risk retention groups, especially non-chartered risk retention groups, and their ability to challenge State discriminatory actions such as this. Because of the fact that these are some of the cases that were cited in this case. Do I have any of that in the record? Well, I think there's ample evidence of the fact that the – I mean, the bottom line is that's a tough – that's something I could send back to the district court to decide. They didn't decide that. They all they said was 1983 applies, so here we are. Well, and then there was an analysis relative to the 1988 award of attorneys' fees. There was a specific order from Judge Maynard. Well, I understand that, but that's assuming 1983 applies. We're in the 1988. That's normal. Well, and the State did challenge that specifically, and I believe that the order adequately addressed the provisions of 1988 and the applicability. It is true that Annie could seek declaratory and injunctive relief under the Declaratory Judgment Act. Yes, sir. Isn't that true? Yes, sir. Which has a totally different provision. I believe that this case, again, I would respectfully submit is clearly within – it was intended with respect to a 1983 action and that a 1988 award of attorneys' fees is applicable in this matter. Appreciate it. Thank you, counsel. Thank you. And I promise there will be some time for rebuttal. Thank you, Your Honor. Thank you. My name is Shane Chess. I'm a senior deputy attorney general for the State of Nevada. I represent the Division of Insurance, Insurance Commissioner. The first point I'd like to make was the initial observation by the justices that this really was a review of the Commissioner's order. I would just like to point out this was not a petition for judicial review. As a matter of fact, the original order of the Commissioner was entered on July 16, 2010. The time to file a judicial review is 30 days. No, I think we understand that we aren't sitting as a state court on a petition for judicial review of that order, but they can still claim harm because they were denied categorically based on the Commissioner's interpretation. I guess what I'm getting – So I'm not sure where that gets you. I guess what I'm getting at is when the complaint was filed, it was for declaratory relief on whether or not the statutes – the Nevada statutory scheme was preempted by LERA. That was the issue. It was not the Commissioner's order in any way, and that's the way we went about briefing this. And one of the points of error before this Court is that the district court did look – did not review this de novo. And that simply is an error of law in a scenario like this. We were asking for declaratory relief as to whether a statutory scheme is preempted, and that's what we were briefing. There is one line in the Commissioner's order, granted, where he discusses NIAGA. You know, but he's the insurance commissioner. He's not a lawyer or a judge. I don't see how that can be throughout the whole statutory scheme of Nevada, which is to protect the public interest from basically insurance that might not be there to pay the claims. Look what happened with national warranty. Right. But let me stop you there. The Commissioner also made some factual findings, and one of the factual findings the Commissioner made is that the division has not previously authorized a foreign RRG that has been issued a certificate of registration by the division to write first dollar auto liability coverage. Next finding of fact, the division has consistently enforced this interpretation that RRGs may not write first dollar automobile liability coverage. So we have the findings of fact by the insurance commissioner, supported by a conclusion of law, that Nevada does not allow RRGs to write this type of policy. And so I'm confused. You seem to be saying, oh, yeah, you can. Perhaps if they and I had requested judicial review and we had looked at the Commissioner's order, we would have determined that those statements were, in fact, in error and it would have been remanded back for further consideration. So it's your position on behalf of the State of Nevada, and I don't mean to put you on the spot, but this RRG can write insurance in Nevada? There's a specific provision in NRS 695E that says an RRG that wants to obtain a certificate of authority, which is the key to becoming authorized, has to go under 694C. However, our legislature has made a determination, even for our domestic captains, they don't want them writing certain lines of insurance. For instance, domestic captains can't insure taxis, buses, any common carriers. What this ruling today, if it goes in Aonai's way, is it's going to allow a foreign RRG to come into Nevada, do things that we don't even let our domestic captains do, with no regulatory authority whatsoever on the State. Well, I don't think it goes that far. It would go that far, because what authority to write first the first they want to write this kind of insurance for first dollar insurance. Thank you. First dollar is fine, but... So that's all they're seeking in this. And all they have to do is obtain a certificate of authority, which allows the insurance commissioner and the insurance division to regulate the form and policy, which goes far beyond just what is the policy, right? Well, you know, how about claims settlement practices? What if an insured who's been injured by one of their buses, was he supposed to go to Vermont to go get relief? No, that's pretty simple. And they're obligated to, if they write insurance there, they're going to have to, subject to state law. Actually, the provisions of LERA only allow an injunction for financial insolvency. The relief would have to come from Vermont. You're talking about first party tort action, in that case. Well, I'm sure they claim preemption, and that it needs to be argued in Vermont. I don't see that. Well, and the thing is, when you look at 3902... They've already conceded that they have to follow Nevada law if they're going to write in Nevada. If you require under insurance coverage, they have to provide it. And what if they don't? That's the problem. We can't issue the cease and desist order as we would be able to if they had a certificate of authority. We have to go beg the insurance commissioner in Vermont to do it. And, you know, in the national warranty case, it was the Cayman Islands. Why is Cayman Islands regulatory authorities protecting Nevada and all Ninth Circuit drivers? That's nine states and two territories. We feel like this is very hazardous. It's a gross infringement on the police power, and that was specifically reserved in 3905. The general preemptions that Honorable Justice Smith was discussing, that's the general preemption. No justice in the Ninth Circuit. Sorry. Was discussing is the general preemption. 3905 was the clarification, in other words, saying these are the things that aren't preempted because they're there to protect the public and it's the State's police power to protect the public. You know, national warranty, ironically, was a consumer protection case. It didn't go to the protection of public safety. But do you take the position under the Federal statute that you can discriminate against our RGs with respect to this type of coverage? With regard to motor vehicle financial responsibility acts, you technically can discriminate against RGs, but they're not subject to the anti-discrimination. That's the hallmark of financial responsibility acts for motor vehicle. There are lesser ones, like the ones in national warranty. Now, those you can't discriminate. Right. So you take the position that you can discriminate, the statutes and the commissioner did discriminate, but that the statutes, under the statutes, you're allowed not to discriminate. Is that the summary of what the rule is? I would say that you can discriminate against financial responsibility in motor vehicle statutes. The commissioner misapplied the statute to the extent he discussed NIGA membership, and that clearly isn't what even the law says. They are actually allowed to write for first-dollar motor vehicle coverage. And then with regard to subsection D, there can be differentiation with justification  Now, again, national warranty was dealing with a different type of law, a different type of protection. It was actually reinsurance in the district court which counsel decided. He said this doesn't even fairly squarely fall into a financial responsibility statute. So I would suggest that this Court distinguish national warranty, the facts and law in that case, and preserve to the States and all the millions of people living in the Ninth Circuit the right to regulate first-dollar auto. I mean, you're talking the guy walking on the street. Why should he be subject to a contract between an ROG and an insured? When Congress passed LIRA, what it was doing, it was a liability crisis. They felt businesses were sophisticated enough. If they wanted to buy insurance from one of these organizations, they could do that because they ultimately bore the risk. But they also said that there's no reason the general public should have to bear that risk. Hence, the 3905 provisions which were added after FLRA was amended. It was a succinct statement of what you think this Court's ruling should be in this case. Yes, Your Honor. You may. I would suggest that this Court distinguish national warranty on its facts and law in that it was a consumer protection financial responsibility act. It didn't protect the general public. It involved a third-party insurance. In other words, the ROG was insuring the warranty which was insuring the public. And secondarily, that was a complete exclusion, whereas Nevada's isn't. Nevada, on the other hand, protects the public. It's a motor vehicle financial responsibility. And it doesn't act as a complete exclusion. And I would remind the case of the Court that in national warranty, that Court even said this is a closed case. Well, I would say these factors are what put this on the other side of that closed case. Thank you. Thank you. The case just argued to be submitted for decision. We thank you all for your arguments. It's an interesting case. And we will be in recess for the morning. All rise.
judges: Farris, Thomas, Smith